**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

CLERK'S OFFICE U.S. DISTRICT. COURT
AT HARRISONBURG, VA
FILED

JUL 2 4 2025

LAURA A. AUSTIN, CLERK
BY: _____
DEPUTY CLERK

UNITED STATES OF AMERICA
*ex rel.* [UNDER SEAL]

    *Plaintiffs,*

v.

[UNDER SEAL]

    *Defendants.*

Case No. 5:25cv00076

**Complaint for Violations of the
Federal False Claims Act, 31
U.S.C. § 3729** *et seq.*

**FILED UNDER SEAL
PURSUANT TO 31 U.S.C. §
3730(b)(2)**

**Jury Trial Demanded**

- 1 -

CLERK'S OFFICE U.S. DISTRICT. COURT
AT HARRISONBURG, VA
FILED

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA** JUL 2 4 2025
**HARRISONBURG DIVISION**

LAURA A. AUSTIN, CLERK
BY:_____
DEPUTY CLERK

Case No. 5:25CV00076

**Complaint for Violations of the
Federal False Claims Act, 31
U.S.C. § 3729** *et seq.*

**FILED UNDER SEAL
PURSUANT TO 31 U.S.C. §
3730(b)(2)**

**Jury Trial Demanded**

UNITED STATES OF AMERICA
*ex rel.* CITIZENS FIGHTING COVID
FRAUD LLC

    *Plaintiff,*

v.

GRAFTON SCHOOL, INCORPORATED


    Registered Agent:

    James H. Stewart
    120 Bellview Ave.
    Winchester, VA  22602



    *Defendant.*


**COMPLAINT**

- 2 -

## I. INTRODUCTION

1.      *Qui tam* relator Citizens Fighting COVID Fraud ("Citizens"), individually and on behalf of the United States of America, by undersigned counsel, files this Complaint against Grafton School, Incorporated ("Defendant") to recover damages, penalties, and attorneys' fees for violations of the Federal False Claims Act, 31 U.S.C. §§ 3729-32 ("FCA"), arising from Defendant: (i) applying for and receiving a $7,283,683 Paycheck Protection Program loan for which Defendant was ineligible, and (ii) applying for and receiving forgiveness of the loan and interest, in a total amount of $7,315,411.92.

2.      The Paycheck Protection Program ("PPP") was established by Congress at the height of COVID lockdowns to provide small business concerns and certain other small organizations with funds to pay up to 24 weeks of payroll costs and benefits through the issuance of 100 percent forgivable loans.

3.      PPP prioritized the millions of Americans employed by small business concerns and small organizations. The Small Business Administration ("SBA") oversaw the program. To be eligible to receive a PPP loan, a business concern, nonprofit organization, veterans organization, or Tribal business concern could employ not more than 500 employees.[1]

4.      Defendant is not small. For the year ending June 2020, Defendant had revenues of $53,640,445. Defendant had 891 employees and was thereby ineligible for a PPP loan and ineligible for loan forgiveness.

---

[1] Business concerns that qualified as "small" under SBA's existing small size standards also were eligible to participate. 15 U.S.C. 636(a)(36)(D)(i). In addition, the 500-employee threshold was raised for business concerns, nonprofit organizations, veterans organizations, and Tribal business concerns operating in industries for which the SBA had established a higher employee threshold, such as manufacturing industries. 15 U.S.C. 636(a)(36)(D)(i)(II).

5.      Defendant violated the FCA by:  misrepresenting the number of employees; falsely certifying it employed no more than 500 employees; falsely certifying it was eligible to receive a PPP loan; concealing Defendant's ineligibility and consequent obligation to repay the loan; and improperly requesting and receiving loan forgiveness.  These misrepresentations, false certifications, and acts of concealment were material facts relied upon by the SBA in approving the loan application and loan forgiveness application.

6.      Defendant is liable for damages to the government, including: (1) the amount of PPP funds received by Defendant for which it was ineligible; (2) the amount of interest on the PPP loan received by Defendant; (3) the principle and interest on the PPP loan that was forgiven; and (4) the loan processing fee paid by the SBA to the lender for the loan disbursed and/or forgiven due to the fraudulent conduct alleged herein.

## II.    JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) and 28 U.S.C. § 1331.

8.      This Court has personal jurisdiction over the Defendant pursuant to 31 U.S.C. § 3732(a) because the Defendant conducts business within this judicial district.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(c) and 31 U.S.C. § 3732(a) because the Defendant maintains an office and conducts business in this judicial district.

10.     Relator Citizens is the original source of this information within the meaning of 31 U.S.C. § 3730(e)(4)(B) and to its knowledge, the wrongful conduct described herein has not been publicly disclosed.

## III.    THE PARTIES

11.    Relator Citizens was established to assist the United States government to detect and remediate fraud in connection with relief programs arising in response to the COVID-19 pandemic.  Citizens is organized under the laws of Wyoming and is located at 30 N Gould St Suite N, Sheridan, WY 82801.

12.    Defendant Grafton School, Incorporated is organized as a nonstock corporation under the laws of Virginia.  Its principal office address is: 3150 Shawnee Dr., Winchester, VA 22601-4208.

## IV.    LEGAL BACKGROUND

### A.    The Federal False Claims Act ("FCA") prohibits making false claims and false certifications, and avoiding obligations to pay money to the government

13.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

14.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

15.    The False Claims Act imposes liability for knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government. 31 U.S.C. § 3729(a)(1)(G).

16.    The term "knowingly" as used in the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the

- 5 -

truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

17.     Any person who violates the FCA is liable for three times the amount of damages that the Government sustains as a result of the defendant's actions, plus civil penalties between $11,665.00 and $23,331.00 per false claim prior to November 2, 2015, as adjusted for inflation. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5; 89 Fed. Reg. 106308, 106310 (Dec. 30, 2024) (establishing penalty range for 2025 as $14,308 - $28,619 per claim).

**B.     Small Business Size Standards**

18.     SBA's size standards define whether a business entity is small and, thus, eligible for Government programs and preferences reserved for "small business" concerns. Size standards have been established for types of economic activity, or industry, under the North American Industry Classification System ("NAICS"). 13 CFR § 121.101(a).

19.     Generally, SBA size standards are expressed either in terms of number of employees or annual receipts in millions of dollars. The number of employees or annual receipts indicates the maximum allowed for a concern to be considered small. 13 CFR § 121.201. When a concern has affiliates, the number of employees or annual receipts, as applicable, of the affiliates are included when determining whether a concern meets a size standard. 13 CFR §§ 121.106(b)(4) and 121.104(d).

**C.    The Paycheck Protection Program ("PPP") makes loans available to certain small businesses and small organizations, and allows forgiveness of 100 percent of the loan and interest**

20.    The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. 116-136 (March 27, 2020), is a law intended to address the economic fallout of the COVID-19 pandemic in the United States.

21.    The CARES Act establishes, *inter alia*, the Paycheck Protection Program. CARES Act § 1102.

22.    The PPP is a loan program designed to provide eligible small business concerns and small organizations loans guaranteed by the Small Business Administration with support from the Department of the Treasury.

23.    The program provides eligible small business concerns and small organizations with funds to pay up to 24 weeks of payroll costs including benefits.

24.    The PPP was enacted as an expansion of the SBA's existing Section 7(a) loan program (15 U.S.C. § 636(a)), but is more beneficial to borrowers in multiple respects:

    a.    PPP loans have a 1 percent interest rate.

    b.    The ordinary requirement that borrowers must be unable to obtain credit elsewhere, as defined in the Small Business Act, is suspended. 15 U.S.C. § 632(h).

    c.    PPP loans are guaranteed under more favorable terms and conditions as other SBA loans, including:

        i.    The SBA guarantees 100% of the outstanding balance, and that guarantee is backed by the full faith and credit of the United States;

        ii.    No collateral is required;

- 7 -

> iii. No personal guarantees are required; and
>
> iv. Lenders are permitted to rely on certifications of the borrower in order to determine eligibility of the borrower.

85 Fed. Reg. 20811, 20816 (April 15, 2020).

d. PPP loans and interest are 100 percent forgivable, provided a sufficient

portion of loan proceeds are used for covered payroll and other costs.

CARES Act § 1106.

## D. Only small business concerns and small organizations are eligible for PPP loans

25. For-profit businesses that meet the small size standards established by the SBA

(*see* 13 CFR 121.201), are eligible to participate in PPP loans.

26. In addition,

> [A]ny business concern, nonprofit organization, veterans organization, or Tribal business concern shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of—
>
>> (I) 500 employees; or
>> (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates.

CARES Act § 1102, *codified at* 13 U.S.C. §636(a)(36)(D)(iv) (internal citation omitted).[2]

27. In determining the number of employees, SBA counts all individuals employed on

a full-time, part-time, or other basis. *Id.* at § 636(a)(36)(D)(v). This includes employees

---

[2] Thought not relevant to this action, special eligibility rules applied to businesses operating in the accommodations and food service industries.

obtained from a temporary employee agency, professional employee organization or leasing concern. 13 C.F.R. § 121.106(a).

28.     For purposes of determining the number of employees, the average number of employees is based upon the number of employees for each of the pay periods for the preceding completed 12 calendar months. 13 C.F.R. § 121.106(b)(1). Part-time and temporary employees are counted the same as full-time employees. *Id.* Employees of all affiliates are aggregated. 13 CFR § 121.106(b)(4); *see generally* 13 CFR § 121.103 and 15 U.S.C. § 636(a)(36)(D)(vi).

29.     In implementing the PPP program, SBA provided additional flexibility for determining the number of employees of a business. A borrower may use SBA's usual calculation (*i.e.*, the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application), or in the alternative, borrowers may use the average employment for calendar year 2019 or for the 12 completed calendar months prior to the date of the loan application. Small Bus. Admin, "Paycheck Protection Program Loans Frequently Asked Questions (FAQs)" at FAQ 14 (April 6, 2020).

**E.     To apply for a PPP loan an applicant must state its number of employees and expressly certify eligibility**

30.     To apply for a PPP loan, an applicant must complete the Paycheck Protection Program Borrower Application Form, SBA Form 2483. At the top of page 1, PPP applicants are required to state the number of employees (emphasis added):

| Check One: | ☐ Sole proprietor ☐ Partnership ☐ C-Corp ☐ S-Corp ☐ LLC<br>☐ Independent contractor ☐ Eligible self-employed individual<br>☐ 501(c)(3) nonprofit ☐ 501(c)(19) veterans organization<br>☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act) ☐ Other | DBA or Tradename if Applicable | |
|---|---|---|---|
| | **Business Legal Name** | | |
| | **Business Address** | **Business TIN (EIN, SSN)** | **Business Phone**<br>( ) - |
| | | **Primary Contact** | **Email Address** |

| Average Monthly Payroll: | $ | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ | Number of Employees: |
|---|---|---|---|---|

31.     The PPP loan applicant must certify that:

    a.     "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program";

    b.     "The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor, or (2) **employs no more than the greater of 500 employees** or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry"; and

    c.     "[T]he information provided in this application and the information provided in all supporting documents and forms is true and accurate in all materials respects.  I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law".

SBA Form 2483, "Paycheck Protection Program Borrower Application Form" (April 2020) (emphasis added).

32.     PPP loan applicants must submit their Borrower Application Form to a federally insured depository institution, federally insured credit union, or a Farm Credit System ("Lender") with delegated authority which processes the loan application and funds the loan.

33.     For the work to process the application and fund the loan, the SBA pays the Lender a processing fee based on the size of the loan funded by the Lender.  SBA pays lenders fees for processing PPP loans in the following amounts:  five (5) percent for loans of not more than $350,000; three (3) percent for loans of more than $350,000 and less than $2,000,000; and one (1) percent for loans of at least $2,000,000. 15 U.S.C. § 636(a)(36)(P).

34.     To be eligible for loan forgiveness, borrowers must complete SBA Form 3508 or SBA Form 3508EZ and calculate eligible payroll and nonpayroll costs.

35.    Borrowers seeking forgiveness must affirmatively state the number of employees at the time they submitted the PPP loan application and the number of employees at the time they applied for loan forgiveness (SBA Form 3508, emphasis added):

**Paycheck Protection Program**
**Loan Forgiveness Application**

OMB Control Number 3245-0407
Expiration Date: 10/31/2020

**PPP Loan Forgiveness Calculation Form**

| Business Legal Name ("Borrower") | DBA or Tradename, if applicable | |
|---|---|---|
| Business Address | Business TIN (EIN, SSN) | Business Phone |
| | | ( ) - |
| | Primary Contact | E-mail Address |

SBA PPP Loan Number: _____    Lender PPP Loan Number: _____

PPP Loan Amount: _____    PPP Loan Disbursement Date: _____

**Employees at Time of Loan Application:** _____

**Employees at Time of Forgiveness Application:** _____

36.    Borrowers must also certify that the dollar amount for which forgiveness is requested:

a.    Was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments);

b.    Includes all applicable reductions due to decreases in the number of full-time equivalent employees and salary/hourly wage reductions;

c.    Includes payroll costs equal to at least 60% of the forgiveness amount; and

d.    Does not exceed eight weeks' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $15,385 per individual or, if a 24-week covered period applies, does not exceed 2.5 months' worth of 2019 compensation for any owner-employee or self-employed individual/general partner, capped at $20,833 per individual.

- 11 -

SBA Form 3508 "Paycheck Protection Program Loan Forgiveness

Application" (June 2020).

37.    Additionally, borrowers must certify that:

a.    They have submitted to the Lender the required documentation verifying

payroll costs, the existence of obligations and service (as applicable) prior

to February 15, 2020, and eligible business mortgage interest payments,

business rent or lease payments. And business utility payments; and

b.    The information provided in the application and the information provided

in all supporting documents and forms is true and correct in all material

respects. *Id.*

## V.    FACTUAL ALLEGATIONS

### A.    Defendant is a large organization ineligible for a PPP loan

38.    During the years in question, Defendant's number of employees exceeded 500

employees as follows:

| Year Ending | Employees |
|---|---|
| June 2019 | 957 |
| June 2020 | 891 |
| June 2021 | 852 |

39.    Defendant states that it operates in the "other technical and trade schools"

industry, NAICS code 611519. The SBA's size standard for this industry is revenues-based (see

chart below). A size standard that is revenues-based does not increase the number of employees

that an organization might have and still remain eligible for a PPP loan – rather, the threshold

remains 500 employees.

- 12 -

40.     Defendant had 957 employees for its fiscal year ending June 2019, and 891 employees the following year – close to twice the permissible number of employees, and was ineligible for a PPP loan.

41.     The size standard for NAICS code 611519 is $16.5 million.

| | Subsector 611—Educational Services | |
|---|---|---|
| 611110 | Elementary and Secondary Schools | $12.0 |
| 611210 | Junior Colleges | $22.0 |
| 611310 | Colleges, Universities and Professional Schools | $30.0 |
| 611410 | Business and Secretarial Schools | $8.0 |
| 611420 | Computer Training | $12.0 |
| 611430 | Professional and Management Development Training | $12.0 |
| 611511 | Cosmetology and Barber Schools | $8.0 |
| 611512 | Flight Training | $30.0 |
| 611513 | Apprenticeship Training | $8.0 |
| 611519 | Other Technical and Trade Schools | $16.5 |

13 CFR 121.201 (emphasis added).

42.     Defendant's eligibility for a PPP loan is determined exclusively by the 500-employee threshold in the CARES Act described above.[3] Nonetheless, it is noteworthy that Defendant had revenues of $53,640,445 for the year ending June 2020 – more than *three times* the maximum revenues in this industry for an organization to be considered small.

**B.     Notwithstanding its large size, Defendant applied for, and falsely certified it was eligible to receive, a PPP loan**

43.     Defendant applied for a PPP loan for approximately $7,828,145 by submitting a Borrower Application form, SBA Form 2843, to BSD Capital, LLC dba Lendistry ("Lendistry") in Brea, California.

44.     To complete the PPP loan application, an authorized representative of Defendant was required to state the number of employees, as determined using SBA rules.

---

[3] Defendant is registered with the IRS as a tax-exempt organization. Defendant thus is not a "business concern" under SBA rules, 13 CFR 121.105(a)(1), the size standards that define "small business concerns" are inapplicable, and the sole criteria for determining PPP loan eligibility is the special CARES Act standard described previously.

45.    To complete the PPP loan application, an authorized representative of Defendant was required to certify that Defendant was "eligible to receive a loan under the rules".

46.    To complete the PPP loan application, an authorized representative of Defendant was required to certify that Defendant "employs no more than the greater of 500 employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry".

47.    To complete the PPP loan application, an authorized representative of Defendant was required to certify that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all materials respects."

48.    On information and belief, Defendant misrepresented the number of employees and thrice certified falsely.

49.    On May 28, 2021, Defendant was approved for a PPP loan in the amount of $7,828,145, with the approved loan amount subsequently revised to $7,283,683. A PPP loan in that amount was extended to Defendant by Lendistry.

50.    As a result of Defendant's fraudulent PPP loan, Lendistry was entitled to receive a 1% loan processing fee from the SBA in the amount of $72,836.83.

**C.    Instead of returning ill-gotten PPP loan funds, Defendant applied for and received loan forgiveness**

51.    Defendant submitted an application for loan forgiveness for the full amount of its PPP loan, plus interest.

52.    On information and belief, on its loan forgiveness application, Defendant misrepresented both the number of employees at the time of loan application and the number of employees at the time of the loan forgiveness application.

- 14 -

53.    On November 26, 2021, Defendant received forgiveness of its PPP loan, with accrued unpaid interest, for a total forgiven amount of $7,315,411.92.

## COUNT I
### Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Submitting False Claims for Payment

54.    Relator Citizens incorporates all the allegations set forth in the foregoing paragraphs as though fully alleged herein.

55.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

56.    Defendant knowingly presented or caused to be presented to the Small Business Administration a claim for approval of a PPP loan for which Defendant was ineligible.

57.    Defendant's knowingly false statements and certifications on the PPP loan application were material to the government's decision to award a PPP loan intended for small businesses.  When submitting the application, an applicant company must certify that it is eligible and that all information included in the application form is true and accurate in all material respects.

58.    But for Defendant's submission of its false claims, the SBA would not have approved the loan.

59.    But for Defendant's submission of its false claims, the SBA would not have paid Lendistry the processing fee of the loan applications.

60.    But for Defendant's submission of its false claims, the SBA would not have approved Defendant's application for loan forgiveness.

61.    The United States of America has been damaged by all aforementioned misrepresentations and failures to comply with requisite laws and regulations by paying approximately $7,388,248.75 to Lendistry as loan forgiveness and bank fees.

62.    Accordingly, the United States government is entitled to treble damages under the False Claims Act in an amount to be determined at trial plus a civil penalty for each false claim presented or caused to be presented by Defendant.

## COUNT II
### Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Creating a False Record or Statement Material to a False Claim

63.    Relator Citizens incorporates all the allegations set forth in the foregoing paragraphs as though fully alleged herein.

64.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim paid or approved by the United States government. 31 U.S.C. § 3729(a)(1)(B).

65.    Defendant knowingly made or caused to be made false records or statements to support a false claim submitted to the Lender and the SBA for approval of the PPP loan.

66.    The false records and statements Defendant made were used to support false claims Defendant through Lender submitted to the United States government.

67.    Defendants' creation of knowingly false loan applications supported Lendistry's claim to the SBA for loan processing fees for a loan that was falsely or fraudulently obtained by Defendant.

68.    The United States of America has been damaged by all aforementioned misrepresentations and failures to comply with requisite laws and regulations by paying approximately $7,388,248.75 to Lendistry as loan forgiveness and bank fees.

- 16 -

69.     Accordingly, the United States government is entitled to treble damages under the False Claims Act in an amount to be determined at trial, plus a civil penalty as deemed appropriate.

## COUNT III
### Violations of the False Claims Act, 31 U.S.C. § 3729(a)(1)(G)
### Improper Avoidance of Obligation to Government

70.     Relator Citizens incorporates all of the allegations set forth in the foregoing paragraphs as though fully alleged herein.

71.     The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

72.     Defendant knowingly concealed or knowingly and improperly avoided an obligation to pay money to the government when it falsely certified compliance with the PPP program in applying for forgiveness of its PPP loan.

73.     As set forth more fully above, Defendant knowingly concealed its ineligibility and failed to return the PPP loan received in error for the purpose of decreasing its obligation to pay money to the government.

74.     But for Defendant's concealment, the SBA would not have forgiven Defendant's obligation to repay the PPP loan including interest.

75.     The United States of America has been damaged by all aforementioned misrepresentations and failures to comply with requisite laws and regulations by paying approximately $7,388,248.75 to Lendistry as loan forgiveness and bank fees.

- 17 -

76.    Accordingly, the United States government is entitled to treble damages under the False Claims Act, in an amount to be determined at trial, plus a civil monetary penalty as deemed appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Relator Citizens, acting on behalf of and in the name of the United States of America, and on its own behalf, prays that judgment will be entered against Defendant for violations of the Federal False Claims Act, 31 U.S.C. § 3729 *et seq.*, as follows:

a)    That for violations of the False Claims Act, 31 U.S.C. § 3729, *et seq.*, this Court enter Judgment against the Defendant in an amount equal to three times the amount of damages the United States Government has sustained because of the Defendant's actions, plus a civil penalty of between $11,665 - $23,331 (as adjusted for inflation) for each action in violation of 31 U.S.C. § 3729;

b)    That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d), including the costs and expenses of this action and reasonable attorneys' fees;

c)    That a trial by jury be held on all issues;

d)    That, in the event the United States Government elects to intervene in and proceed with this action, Relator be awarded between 15% and 25% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(1);

e)    That in the event that the United States Government does not proceed with this action, Relator be awarded between 25% and 30% of the proceeds of the action or of any settlement in accord with 31 U.S.C. § 3730(d)(2);

f)     That pursuant to 31 U.S.C. § 3730(c)(5), Relator be awarded a share of any alternate remedy that the United States Government elects to pursue;

g)     That permanent injunctive relief be granted to prevent any recurrence of the False Claims Act conduct described above for which redress is sought herein;

h)     That the United States and the Relator be awarded prejudgment and post judgment interest; and

i)     That the United States Government and Relator receive all other relief, both in law and equity, to which they may reasonably be entitled.

Respectfully submitted,

*Qui Tam* Relator CITIZENS FIGHTING COVID FRAUD
LLC

s/ _Geoffrey M. Bohn signature_

Geoffrey M. Bohn, VSB #42610
Email: gbohn@bohn-battey.com
BOHN & BATTEY, PLC
P.O. Box 101685
Arlington, VA 22210
(703) 599-7076
(703) 842-8089 (Fax)

Adam Hancock, VSB #44884
Email: hancocklawpractice@gmail.com
HANCOCK LAW PRACTICE
2007 15th St N 106
Arlington, VA 22201
(703) 836-3512

Attorneys for *Qui Tam* Relator Citizens Fighting Covid
Fraud LLC

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator Citizens Fighting

Covid Fraud hereby demands a trial by jury on all issues of fact.

s/ Geoffrey M. Bohn
Geoffrey M. Bohn

- 20 -