**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| | **Case No.** 5:25 cv 00076 |
| UNITED STATES OF AMERICA<br>*ex rel.* CITIZENS FIGHTING COVID<br>FRAUD LLC | |
| *Plaintiff,* | **FILED UNDER SEAL<br>PURSUANT TO 31 U.S.C. §<br>3730(b)(2)** |
| v. | |
| GRAFTON SCHOOL, INCORPORATED | |
| Registered Agent: | |
| James H. Stewart<br>120 Bellview Ave.<br>Winchester, VA 22602 | |
| *Defendant.* | |

**DISCLOSURE OF MATERIAL EVIDENCE
PURSUANT TO 31 U.S.C. § 3730(b)(2)**

- 1 -

1.      *Qui tam* relator Citizens Fighting COVID Fraud ("Citizens"), individually and on behalf of the United States of America, by undersigned counsel, files this Complaint against Grafton School, Inc. ("Defendant") to recover damages, penalties, and attorneys' fees for violations of the Federal False Claims Act, 31 U.S.C. §§ 3729-32 ("FCA"), arising from Defendant applying for and receiving a $7,283,683 Paycheck Protection Program loan for which Defendant was ineligible, and for applying for and receiving forgiveness of the loan and interest, in a total amount of $7,315,411.92.

## I.      Defendant was not eligible for a PPP loan

## A.     Defendant does not meet the PPP size standard for eligibility

2.      Section 1102 of the CARES Act defines eligibility requirements for participating in the PPP program:

> INCREASED ELIGIBILITY FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS.—
>
> (i) IN GENERAL.—During the covered period, in addition to small business concerns, any business concern, nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) shall be eligible to receive a covered loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of—
>
> (I)     500 employees; or
>
> (II)    if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates.

A copy of Section 1102 of the CARES Act is included herewith as Exh. A at 3.

3.      Defendant was ineligible because Defendant had more than 500 employees.

4.    In determining a concern's number of employees, SBA counts "all individuals employed on a full-time, part-time, or other basis. This includes employees obtained from a temporary employee agency, professional employee organization or leasing concern.  SBA will consider the totality of the circumstances, including criteria used by the IRS for Federal income tax purposes, in determining whether individuals are employees of a concern."  13 CFR 121.106(a).  A copy of relevant SBA regulations from 2020 is included as Exh. B hereto.

5.    To apply the 500-employee threshold, "[t]he average number of employees of the concern is used (including the employees of its domestic and foreign affiliates) based upon numbers of employees for each of the pay periods for the preceding completed 12 calendar months."  13 CFR 121.106(b).  Part-time and temporary employees are counted the same as full-time employees. *Id.*

6.    The SBA allowed additional flexibility in calculating the number of employees for purposes of the Paycheck Protection Program, to allow the period of time used to calculate the number of employees to correspond with the period of time used to calculate payroll costs.  In all cases, the period remained 12 months for on-going businesses, but an applicant could use calendar year 2019 in substitute for the immediately preceding 12-month period and could use average employment rather than average employment *per pay period*:

> In general, borrowers can calculate their aggregate payroll costs using data either from the previous 12 months or from calendar year 2019. . . . Borrowers may use their average employment over the same time periods to determine their number of employees, for the purposes of applying an employee-based size standard. Alternatively, borrowers may elect to use SBA's usual calculation: the average number of employees per pay period in the 12 completed calendar months prior to the date of the loan application

PPP FAQs at Q&A 14, Exh. C.

7.    Defendant's employment during the years in question was as follows:

| Year Ending | Employees |
|---|---|
| June 2019 | 957 |
| June 2020 | 891 |
| June 2021 | 852 |

8.      Documentation of these amounts is included in Defendant's annual reports to the

IRS, including for the period July 1, 2018 – June 30, 2019 (Exh. D at 1):

**5**  Total number of individuals employed in calendar year 2018 (Part V, line 2a) . . . . . . . .     **5**              957

For the period July 1, 2019 – June 30, 2020 (Exh. E at 1):

**5**  Total number of individuals employed in calendar year 2019 (Part V, line 2a) . . . . . . . .     **5**              891

And for the period July 1, 2020 – June 30, 2021 (Exh. F at 1):

**5**  Total number of individuals employed in calendar year 2020 (Part V, line 2a) . . . . . . . .     **5**              852

**B.      Defendant operates in an industry with a revenue-based size standard, such that the PPP loan eligibility threshold remains at 500 employees**

9.      The Small Business Administration ("SBA") establishes size standards by

industry, using the North American Industry Classification System.  The size standards generally

are expressed either in number of employees or annual receipts in millions of dollars.  13 CFR §

121.201 (2020).  The number of employees or annual receipts indicates the maximum allowed

for a concern and its affiliates to be considered small. *Id.*

10.      Defendant self-classified as operating in the "Other Technical and Trade Schools"

industry, for purposes of its PPP loan application.  *See https://pandemicoversight.gov/data-*

*interactive-tools/interactive-dashboards/paycheck-protection-program* (last visited May 29,

2025).

11.      A $16.5 million threshold applies to the industry in which Defendant operates,

NAICS 611519, Other Technical and Trade Schools:

- 4 -

| Subsector 611—Educational Services | | |
|---|---|---|
| 611110 | Elementary and Secondary Schools | $12.0 |
| 611210 | Junior Colleges | $22.0 |
| 611310 | Colleges, Universities and Professional Schools | $30.0 |
| 611410 | Business and Secretarial Schools | $8.0 |
| 611420 | Computer Training | $12.0 |
| 611430 | Professional and Management Development Training | $12.0 |
| 611511 | Cosmetology and Barber Schools | $8.0 |
| 611512 | Flight Training | $30.0 |
| 611513 | Apprenticeship Training | $8.0 |
| 611519 | Other Technical and Trade Schools | $16.5 |

SBA's size standards are codified at 13 CFR § 121.201.

12.    Because the revenue-based size standard does not increase the number of employees that an organization might have and still remain eligible for a PPP loan, the threshold for eligibility remains 500 employees.

**C.    Defendant is not a "business concern" under SBA rules – and thus cannot qualify as a "small business concern" for purposes of PPP loan eligibility**

13.    Defendant is registered with the IRS as a tax-exempt organization and is not a "business concern" for purposes of the PPP program.  13 CFR 121.105(a)(1) ("[A] business concern eligible for assistance from SBA as a small business is a business entity *organized for profit*, with a place of business located in the United States, and which operates primarily within the [U.S.] or which makes a significant contribution to the U.S. economy") (emphasis added).

14.    Whether or not Defendant meets the revenue size standard applicable to the industry in which it operates, Defendant cannot qualify as a small *business concern*.

**D.    Defendant's annual receipts far exceed the $16.5 million size standard**

15.    As noted above, Defendant is not a "business concern." Even if Defendant were a business concern, however, Defendant would be ineligible for a PPP loan because Defendant is not a "small business concern."

- 5 -

16.    For purposes of PPP loans, annual receipts[1] generally are measured as "the total receipts of the concern over its most recently completed three fiscal years divided by three." 13 CFR § 121.104(c)(4) (effective January 6, 2020), Exh. B.

17.    Defendant's revenues for the years in question are as follows:

| Year Ending | Revenue | Documentary Source |
|---|---|---|
| June 2019 | $58,123,369 | Exh. D |
| June 2020 | $53,640,445 | Exh. E |
| June 2021 | $52,212,218 | Exh. F |

18.    Defendant's annual receipts for purposes of applying the SBA small size standard are the average of annual receipts. 13 CFR § 121.104(c)(4); Exh. B. The average for Defendant is approximately $54,658,677. This is far in excess of the $16.5 million size standard.

19.    Organizations of Defendant's size in its industry are not the intended recipients of PPP loans.

## II. Falsely Asserting PPP Eligibility Violates the FCA

### A.    Blackletter law

20.    The False Claims Act imposes liability on any person who knowingly presents or causes to be presented a false or fraudulent claim for payment or approval. 31 U.S.C. § 3729(a)(1)(A).

21.    The False Claims Act imposes liability on any person who knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B).

---

[1] Receipts means "all revenue in whatever form received or accrued from whatever source, including from the sales of products or services, interest, dividends, rents, royalties, fees, or commissions, reduced by returns and allowances." 13 CFR § 121.104(a) (2020).

22.    The False Claims Act imposes liability for knowingly making, using, or causing to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealing or knowingly and improperly avoiding or decreasing an obligation to pay or transmit money or property to the government. 31 U.S.C. § 3729(a)(1)(G).

23.    The term "knowingly" as used in the FCA means that a person, with respect to information, (i) has actual knowledge of the information, (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information. 31 U.S.C. § 3729(b). No proof of specific intent to defraud is required to show that a person acted knowingly under the FCA. *Id.*

24.    Any person who violates the FCA is liable for three times the amount of damages that the Government sustains as a result of the defendant's actions, plus civil penalties between $11,665.00 and $23,331.00 per false claim prior to November 2, 2015, as adjusted for inflation. 31 U.S.C. § 3729(a); 28 C.F.R. § 85.5; 89 Fed. Reg. 106308, 106310 (Dec. 30, 2024) (calculating penalty range for 2025 as $14,308 - $28,619 per claim).

**B.    Defendant affirmatively made false statements**

25.    When it applied for a PPP loan, Defendant had to complete the Paycheck Protection Program Borrower Application Form, SBA Form 2483. A copy of template form is included as Exh. G hereto.

26.    At the top of page 1, PPP applicants are required to identify the number of employees:

- 7 -

| Check One: | ☐ Sole proprietor  ☐ Partnership  ☐ C-Corp  ☐ S-Corp  ☐ LLC  ☐ Independent contractor  ☐ Eligible self-employed individual  ☐ 501(c)(3) nonprofit  ☐ 501(c)(19) veterans organization  ☐ Tribal business (sec. 31(b)(2)(C) of Small Business Act)  ☐ Other | DBA or Tradename if Applicable | |
|---|---|---|---|
| | Business Legal Name | | |
| | Business Address | Business TIN (EIN, SSN) | Business Phone |
| | | | (   )   - |
| | | Primary Contact | Email Address |
| | | | |

| Average Monthly Payroll: | $ | x 2.5 + EIDL, Net of Advance (if Applicable) Equals Loan Request: | $ | Number of Employees: | |
|---|---|---|---|---|---|

27.    To be eligible for a PPP loan, the greatest number of employees that Defendant permissibility could have was 500 employees.

28.    Defendant misstated its number of employees as "500" or otherwise did not truthfully report its actual number of employees as determined under SBA rules.[2]

29.    In addition, as part of completing the form, Defendant had to expressly certify that it "employes no more than . . . 500 employees" (Exh. G):

I certify that:
- I have read the statements included in this form, including the Statements Required by Law and Executive Orders, and I understand them.
- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).
- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry.

30.    This certification was false – Defendant employed more than 500 people.

31.    Defendant further was required to certify the accuracy of its application (*Id.*):

I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

32.    The number of employees is material to eligibility for PPP, and the misstatement of the number of employees makes false the certification as to truth and accuracy.

---

[2] Defendant appears to have affirmatively misstated that it had exactly 500 employees, based on the government's official database of PPP loans in which it indicates that the number of "jobs reported" by Defendant was "500." *See https://pandemicoversight.gov/data-interactive-tools/interactive-dashboards/paycheck-protection-program* (last visited May 29, 2025).

33.    PPP loan applications were submitted to lenders – but the submission to the lender (*i.e.*, and not directly to the SBA) does not avoid liability under the false claims act. 31 U.S.C. § 3729(a)(1)(B) (imposing liability on any person who "knowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim".

34.    When it applied for a PPP loan forgiveness, Defendant had to complete the PPP Loan Forgiveness Calculation Form, SBA Form 3508 or 3508EZ. A copy of template Form 3508 is included as Exh. H hereto.

35.    At the top of page 1, PPP loan forgiveness applicants are required to identify the number of employees at the time of loan application and the number of employees at the time of the forgiveness application:

**PPP Loan Forgiveness Calculation Form**

| Business Legal Name ("Borrower") | | DBA or Tradename, if applicable | |
|---|---|---|---|
| Business Address | NAICS Code | Business TIN (EIN, SSN, ITIN) | Business Phone |
| | | | (   )   – |
| | | Primary Contact | E-mail Address |
| | | | |

☐ First Draw PPP Loan ☐ Second Draw PPP Loan (check one)

SBA PPP Loan Number:_____    Lender PPP Loan Number: _____

PPP Loan Amount:_____    PPP Loan Disbursement Date: _____

Amount of PPP Loan Increase (if applicable):_____    Date of PPP Loan Increase (if applicable): _____

Employees at Time of Loan Application: _____    Employees at Time of Forgiveness Application: _____

Exh. H at 1.

36.    Under the rules, Defendant was required to provide backup payroll information, including listing employees *by name* in PPP Schedule A Worksheet. *See* Exh. H at 5.

37.    Truncating Defendant's full list of actual employees to an artificial subset of 500 is a falsity by omission. More specifically, truncating the list violates the certification that "By Signing Below, You Make the Following Representations and Certifications on Behalf of Borrower: . . . The information provided in this application and the information provided in all supporting documents and forms is true and correct in all material respects." *Id.* at 4.

- 9 -

**C.    Damages to the govt arising from ineligible participation in programs for small businesses is the full value of payments made under the program**

38.    Damages in FCA cases have been explored extensively. When an ineligible party participates in a government program for which it is not eligible, the government's harm is the full amount paid to the ineligible party. *See U.S. ex rel. Longhi v. Lithium Power Technologies*, 530 F.Supp.2d 888 (S.D. Texas 2008) (explaining that when the government awards money grants to a small business, the "Government's benefit of the bargain was to award money to *eligible deserving small businesses*" and that "it is appropriate to value damages in the amount the government actually paid to the Defendants."); *United States ex rel. Feldman v. Van Gorp.*, 697 F.3d 78 (2d Cir. 2012). ("In other words, when a third-party successfully uses a false claim regarding how a grant will be used in order to obtain the grant, the government has entirely lost its opportunity to award the grant money to a recipient who would have used the money as the government intended.").

39.    PPP ineligibility has been the subject of multiple actions in federal court, and which have been settled by payment of a multiple of the amount of the forgiven loan for which the entity was not eligible:

> ➤    "[Victory Automotive Group]'s application for a PPP loan certified it was a small business with fewer than 500 employees. However, VAG shared common operational control with dozens of automobile dealerships across the country, and VAG and its affiliates had more than 3,000 employees in total. For that reason, VAG was not eligible for the $6,282,362 PPP loan it received, which was later forgiven in full."
>
> *See* DOJ Press Release:  Victory Automotive Group Inc. Agrees to Pay $9 Million to Settle False Claims Act Allegations Relating to Paycheck Protection Program Loan, Exh.. 1.
>
> *U.S. ex rel. Jones v. Victory Automotive Group, Inc, et al.*, No. 8:21-cv-1742 (M.D. Fla.).

- 0 -

➢ "Under the rules applicable at the time of the loans covered by today's settlements, certain organizations were not eligible to receive a PPP loan. Certain ineligible organizations certified they were eligible and, in fact, received loans which were ultimately forgiven."

DOJ Press Release: Labor Organizations to Pay $5.1 Million to Settle False Claims Act Allegations Relating to Paycheck Protection Program Loans (May 29, 2025), Exh. J.

➢ "When it passed the Paycheck Protection Program, Congress made policy decisions about what types of businesses would and would not be eligible for the pandemic-relief resources that it made available," said Acting United States Attorney Frohling. "Congress decided that it did not want to provide taxpayer dollars to large companies or groups of affiliated companies who likely had access to private sources of capital typically unavailable to American small businesses. The eight-figure settlement announced today reflects the continuing commitment of the Department of Justice and the Small Business Administration to hold accountable sophisticated businesses that abused this emergency program."

DOJ Press Release: Affiliated Companies Agree to Pay $10.8 Million to Resolve Allegations that They Fraudulently Obtained COVID-19 Loans (April 8, 2025), Exh. K.